In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4071

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES R. ROBINSON IV,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 97 CR 30025--Richard Mills, Judge.

On Remand From
The United States Supreme Court

Submitted January 26, 2001--DECIDED May 3, 2001


  Before BAUER, RIPPLE, and EVANS, Circuit
Judges.

  EVANS, Circuit Judge. On direct appeal,
we affirmed Charles Robinson's cocaine
convictions but vacated his sentences,
reasoning that the police reports relied
on by the ditrict court to calculate the
vast majority of his relevant conduct
lacked sufficient indicia of reliability.
See United States v. Robinson, 164 F.3d
1068, 1071 (7th Cir. 1999). After the
district court resentenced Robinson, we
rejected Robinson's new appeal and
affirmed the amended judgment in an
unpublished order. See United States v.
Robinson, No. 99-4071, 2000 WL 689182
(7th Cir. 2000). Subsequently, the
Supreme Court granted Robinson's petition
for certiorari, vacated our judgment, and
returned the case to us for further
consideration in light of Apprendi v. New
Jersey, 120 S. Ct. 2348 (2000). See
Robinson v. United States, 121 S. Ct. 559
(2000). Both Robinson and the United
States have submitted statements pursuant
to Circuit Rule 54 indicating their
position as to the action we should take
on remand.

  Because Robinson did not raise an
Apprendi claim either time that he was
sentenced, our review is only for plain
error. United States v. Nance, 236 F.3d

820, 824 (7th Cir. 2000). This means we must determine (1) whether there was error at all, (2) if so, whether it was plain, (3) whether the error affected Robinson's substantial rights, and (4) whether it seriously affected the fairness, integrity, or public reputation of the proceedings. Johnson v. United States, 520 U.S. 461, 466-67 (1997). As with most unpreserved Apprendi claims presented to this court, Robinson fails to establish the fourth prong of the plain-error test. For the sake of completeness, however, we will briefly address the other prongs of the test.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S. Ct. at 2362-63. The implication of Apprendi for defendants charged with drug offenses under 21 U.S.C. sec. 841(a) is that they may not be subjected to a statutorily enhanced sentence based on drug type and quantity, as provided in sec. 841(b), without those elements being charged in the indictment and proven beyond a reasonable doubt. Nance, 236 F.3d at 824 (collecting cases). However, when a defendant's sentence does not exceed 20 years imprisonment--the maximum under sec. 841(b) for possessing/distributing the smallest amount of cocaine--Apprendi is irrelevant. Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000); accord United States v. Jones, ___ F.3d ___, No. 00-2531, 2001 WL 294306, at *3 (7th Cir. Mar. 28, 2001); United States v. Huerta, 239 F.3d 865, 876 (7th Cir. 2001).

In this case Robinson was convicted of (1) possession of both powder and crack cocaine with intent to distribute, (2) distribution of crack, and (3) possession of crack with intent to distribute. The district court sentenced him to consecutive prison terms of 40, 20, and 40 years, respectively. The distribution sentence does not exceed 20 years, so it drops from the analysis. Talbott, 226 F.3d at 869. And since both of the remaining counts alleged explicitly that Robinson possessed quantities of crack greater than five grams, the indictment satisfies the requirement that the type and quantity of drugs necessary to

trigger a statutory enhancement--in this case 40 years pursuant to 21 U.S.C. sec. 841(b) (1)(B)(iii)--be charged in the indictment. But, because the issue of drug quantity was not submitted to the jury, the district court erred when it sentenced Robinson to 40 years on each of the possession convictions. Nance, 236 F.3d at 825. Moreover, Apprendi makes it apparent that these errors were plain. United States v. Patterson, 241 F.3d 912, 913 (7th Cir. 2001); United States v. Jackson, 236 F.3d 886, 888 (7th Cir. 2001). Also, because the errors increased Robinson's sentences by 20 years, there is no question that the errors affected his substantial rights. See United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001) (7-year increase affects defendant's substantial rights); Nance, 236 F.3d at 826 (22-month increase). So Robinson's case easily meets the first three prongs of the plain-error test.

To be entitled to a new sentencing hearing, however, Robinson must also establish that the sentencing errors seriously affected the fairness, integrity, or public reputation of the judicial proceedings. When applying this test to Apprendi cases, we ask whether "it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" Nance, 236 F.3d at 825 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)). In practical terms, we analyze whether there was overwhelming evidence that with respect to each 40-year count Robinson possessed more than five grams of crack. See Patterson, 241 F.3d at 914; Mietus, 237 F.3d at 875; Jackson, 236 F.3d at 888. In this case the police arrested Robinson twice, each time recovering quantities of crack that exceeded five grams. These arrests underlie the two 40-year sentences. As we will explain, as to each 40-year count, the government's evidence of drug quantity was overwhelming.

Regarding the first arrest, Officers Jerry Castles and Jeremy Woolridge testified that they separately responded to a call relaying a Steak 'N Shake security guard's report of a man at the drive-thru with an open bottle of beerbetween his legs as he sat in his car. Castles identified Robinson as the driver and arrested him. Robinson's car

was searched, and Castles testified that in addition to drug paraphernalia, he uncovered an off-white chunky substance. Woolridge testified that he assisted in the search and discovered a plastic baggy containing a white powdery chunky substance. Castles then drove Robinson to the police station. After he was processed, Officer Joseph Pisarek transported Robinson to the county jail. Pisarek testified that when they arrived at the jail he searched Robinson and discovered a small, white, rock-like substance. The next morning, Officer Michael Pennington searched Robinson's impounded car. Pennington testified that his search uncovered a brown pill bottle containing what appeared to be crack.

State forensic scientist Michael Cravens testified that these seized items were 2/10 of a gram of crack, 4/10 of a gram of crack, 27.6 grams of cocaine, and 16.2 grams of crack. Robinson did not contest on cross-examination the recovery, nature, or quantity of these seized items, nor did he submit any evidence of his own disputing these facts. Rather, his trial strategy was to argue that he possessed the drugs for personal consumption, not distribution. The jury obviously rejected this defense.

Regarding the second arrest, Officer Dennis Baird testified that he responded to a Super 8 motel manager's report of suspected drug activity in a hotel room. Baird testified that the occupant of the room was absent when he arrived but that a vehicle matching the hotel manager's description of the guest's car soon drove up. Baird testified that while standing on the passenger side of the car he observed Robinson seated in the driver's seat and a bag of what appeared to be crack next to the gear shift. When Baird identified himself as a police officer and asked Robinson to exit the vehicle, Robinson attempted to drive away. Baird blocked the parking lot exit with his car and Robinson abandoned his vehicle and unsuccessfully attempted to flee on foot. Baird testified that he discovered the bag of crack on the ground about 10 feet from Robinson's car. State forensic scientist Mark Paiva testified that the bag held 14.5 grams of crack. Again, Robinson did not contest the nature, quantity, or recovery of the bag of crack.

Robinson's decision not to contest the quantities of drugs obtained in the searches is significant, given his theory that the drugs were for his personal use. Officer Kelly Cain testified that based on his experience most crack addicts purchase quantities ranging from less than one gram to 3 grams for personl use. On cross-examination, Cain stated his belief that personal-use amounts of crack top out at 5 to 6 grams. Thus, to establish that he possessed the drugs for personal use, i.e., to create doubt that he was a drug dealer, Robinson had two options for closing the gap between the amount of drugs recovered and the personal-use-amount ceiling. He could have (1) contested the quantity of drugs recovered, or (2) contradicted Cain's testimony regarding the five- to six-gram personal-use ceiling. We believe that Robinson's decision to pursue only the latter course indicates that the government's drug quantity evidence was solid. In fact, it is hard to imagine any reasonable argument Robinson could have presented disputing the stated drug quantities. This is not a case in which witnesses testified that they observed the defendant with certain quantities of drugs. Here, the police actually recovered the drugs from Robinson, and a forensic scientist testified that each of the two most significant packages of crack weighed well over 5 grams. Accordingly, the government presented overwhelming evidence that Robinson twice possessed more than 5 grams of crack. See Mietus, 237 F.3d at 875 (evidence overwhelming where government presented uncontested evidence that police seized drugs in excess of amount necessary to trigger increased sentence); cf. United States v. Westmoreland, 240 F.3d 618, 635 (7th Cir. 2001) (reversible error where amount of drugs recovered not sufficient to trigger increased sentence and drug quantity contested at trial). Thus, Robinson's Apprendi argument comes up short.

Perhaps foreseeing the difficulty of meeting the plain error test, Robinson's Circuit Rule 54 statement urges us to adopt a novel interpretation of "statutory maximum." Robinson argues that "statutory maximum" means the maximum penalty within the relevant range specified by the sentencing guidelines.

Thus, Robinson contends, any fact that affects a guideline range determination, e.g., a drug quantity determination for purposes of relevant conduct, must be submitted to a jury and proved beyond a reasonable doubt. This argument is based on an expansive reading of Justice Thomas's concurring opinion in Apprendi, which states that any fact that is a "basis for imposing or increasing punishment--for establishing or increasing the prosecution's entitlement--is an element [of the crime]," not just a sentencing factor. Apprendi, 120 S. Ct. at 2379 (Thomas, J., concurring (joined by Scalia, J.)). Thus, Justice Thomasreasoned, a fact that triggers a mandatory minimum sentence is an element even though it does not affect the statutory maximum penalty, e.g., a fact that restricts a 0- to 10-year sentencing range to a 5- to 10-year range must be submitted to a jury and proved beyond a reasonable doubt. Robinson argues that we should apply Justice Thomas's reasoning not only to mandatory minimum penalties imposed by statute but also to all sentencing guideline issues. Because we have already rejected this suggested extension of Apprendi both as it applies to mandatory minimum penalties, United States v. Williams, 238 F.3d 871, 877 (7th Cir. 2001) (collecting cases); United States v. Smith, 223 F.3d 554, 566-67 (7th Cir. 2000), and sentencing guideline issues, Hernandez v. United States, 226 F.3d 839, 841 (7th Cir. 2000), we think Robinson's argument lacks merit.

   For these reasons, we believe that the sentences imposed by the district court did not violate the rule announced in Apprendi. The original judgment is, therefore, reinstated.