**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William A. MCKINLEY, Defendant–Appellant,**

**Randy Spiridigliozzi, Defendant–Appellant,**

**Duane Toner, Defendant–Appellant.**

**Nos. 99–1329, 99–2104, 99–1709.**

United States Court of Appeals,
Sixth Circuit.

Sept. 13, 2001.

276

Before MARTIN, Chief Circuit Judge, NELSON, Circuit Judge, and RICE, Chief District Judge.*

NELSON, Circuit Judge.

The defendants—William McKinley, Duane Toner, and Randy Spiridigliozzi—were indicted (along with four co-defendants) for conspiracy to possess marijuana with intent to distribute it, a violation of 21 U.S.C. § 846, and for the same offense within 1,000 feet of a school zone, a violation of 21 U.S.C. § 860. Messrs. Toner and Spiridigliozzi pleaded guilty, and Mr. McKinley proceeded to trial. A jury found McKinley guilty of conspiracy under § 846, but acquitted him of a charge of witness intimidation that had been added in a superseding indictment. The judge sentenced McKinley, Toner, and Spiridigliozzi to, respectively, 168, 72, and 90 months in prison.

The defendants appealed on various grounds. Mr. McKinley initially raised several issues stemming from his trial, but after the Supreme Court handed down its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), he elected to abandon all of his

* The Honorable Walter Herbert Rice, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

trial-based assignments of error and limit his appeal to an *Apprendi* issue. The government acknowledges that McKinley's sentence cannot withstand *Apprendi* scrutiny, but the appropriate length of the sentence that should be imposed on remand is in dispute. There is also a dispute as to whether the government should be given an option to retry this defendant.

Mr. Toner likewise raises an *Apprendi* issue, and he challenges both the determination of the quantity of drugs attributable to him and a decision to enhance his offense level for obstruction of justice. Mr. Spiridigliozzi contends that he should have been offered an opportunity to withdraw his guilty plea once he discovered that he would not receive an anticipated credit for acceptance of responsibility. He also maintains that the evidence did not support an offense level enhancement imposed for use of a firearm during a drug-related crime.

We shall affirm the judgments entered against Messrs. Spiridigliozzi and Toner. Mr. McKinley's case will be remanded for resentencing in light of *Apprendi*.

I

An individual named Mario Saenz controlled a network of distributors who imported marijuana from Mexico. Mr. McKinley began receiving shipments from Mr. Saenz in 1991 or 1992 for distribution in Michigan. Another of Mr. Saenz's Michigan distributors (and a subsequent paramour of Mr. Spiridigliozzi), Cindy Crowl, generally supplied Toner and Spiridigliozzi with their marijuana.

Mr. McKinley suspected that a former girlfriend, Nikki Williams, was going to expose his drug operation to the authorities. In an effort to forestall this, Mr. McKinley threatened Ms. Williams with bodily harm should she divulge what she knew. The threats proved unavailing; Ms.

Williams contacted the Drug Enforcement Agency and eventually became one of the key witnesses against Mr. McKinley.

Ms. Crowl became an important source of information for the government after she pleaded guilty to drug charges and tried to secure a reduced sentence by helping the government build its case against Spiridigliozzi and Toner. In this connection she gave the government meticulous records relating to the quantities of drugs handled by the two men.

Another participant in the conspiracy was Timothy Finney. Mr. Finney took over from Ms. Crowl after she suspended operations in order to attend college. Mr. Finney operated out of a house situated near a local elementary school. With some of the other coconspirators, Finney was ultimately arrested at this house.

II

A. United States v. McKinley (No. 99–1329)

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Mr. McKinley argues that because he was convicted of violating 21 U.S.C. § 846 by conspiring to possess marijuana with intent to distribute it, a crime that carries a statutory maximum sentence of five years when quantity is not specified, his sentence may not exceed five years. Pointing to allegations in the indictment that certain of McKinley's co-conspirators operated within 1,000 feet of an elementary school, however, the government argues that under 21

U.S.C. § 860 McKinley faced a maximum sentence of ten years.[1] The government concedes that *Apprendi* would not permit us to affirm Mr. McKinley's 168–month sentence.

The indictment failed to specify the manner in which Mr. McKinley himself was supposed to have violated § 860, and neither the jury (which was not instructed on the matter) nor the judge made any finding that Mr. McKinley had committed a § 860 offense. The government nevertheless contends that Mr. McKinley can properly be sentenced to a 10 year term because the evidence that he violated § 860 was so overwhelming that the *Apprendi* error did not seriously affect the fairness, integrity or public reputation of the judicial proceedings. See *United States v. Robinson*, 250 F.3d 527, 530 (7th Cir.2001).

The evidence in question shows that some of McKinley's co-conspirators were arrested at a house—used for the storage of marijuana—that could be seen from the parking lot of a "nearby" elementary school. The evidence further shows that Mr. McKinley told Ms. Williams that because the house was "within a thousand yards [sic] of a school zone ... it made the case federal." We disagree with the government's characterization of this evidence as "overwhelming."

The government also asserts that the matter was not disputed. Since little attention appears to have been devoted to the § 860 issue at trial, however (and because of the lack of specificity in the indictment), Mr. McKinley had no obvious reason to contest it. Furthermore, the government adduced no proof that the distance between the house and the school had been measured. See *United States v.*

*Glover*, 153 F.3d 749, 755 (D.C.Cir.1998) (finding evidence sufficient when a "police officer testified that he had been to the school and had measured the distance between the school and the convenience store"). Based on the evidence pointed to by the government, we cannot say that a "reasonable jury would be compelled" to find a violation of § 860. *United States v. Noble*, 246 F.3d 946, 956 (7th Cir.2001). We therefore conclude that the 10–year sentence sought by the government is not sustainable under *Apprendi*.

■ Turning to the issue of the remedy, the government asks us to give it the option of retrying the case if we determine, as we have, that a five-year sentence is the maximum penalty to which Mr. McKinley can be subjected in the present posture of the case. The government cites, in this regard, a pre-*Apprendi* decision, *United States v. Dale*, 178 F.3d 429 (6th Cir.1999).

As we have explained, however, "nothing in *Dale* purports to bind future courts exclusively to the remedy granted in that case; that is, a remand giving the government the option to 'permit' the defendant to be sentenced for the lesser penalty or force him to submit to a new trial." *United States v. Randolph*, 230 F.3d 243, 252 (6th Cir.2000). In *Randolph* we were concerned about allowing the government a second "bite at the apple." *Id.* We have a similar concern here, where the government failed to press the § 860 issue at trial and did not ask to have the jury instructed on that issue.

Further militating against allowing the option sought by the government are recent cases from our sister circuits. See *United States v. Nordby*, 225 F.3d 1053

---

**1.** The indictment alleged that "[i]t was a further part of the conspiracy that RANDY S. SPIRIDIGLIOZZI, DUANE TONER and others would, within 1,000 feet of the real property of an elementary school, obtain marihuana for distribution in Michigan."

(9th Cir.2000), and *United States v. Westmoreland,* 240 F.3d 618 (7th Cir.2001), both of which involved reversals under *Apprendi* and in both of which requests for a retrial option were denied. See also *United States v. Caldwell,* 238 F.3d 424, n. 2 (6th Cir.2000) (unpublished), *cert. denied,* —— U.S. ——, 121 S.Ct. 1638, 149 L.Ed.2d 497 (2001) ("Although we need not decide what the proper remedy would be if the sentence had violated *Apprendi,* we observe that the remedy uniformly has been to remand for resentencing"). Under the circumstances of the present case, it seems to us that the appropriate disposition is a simple remand for imposition of a sentence not exceeding five years.

B. United States v. Toner (No. 99–1709)

Mr. Toner raises three issues on appeal. First, he contends that the trial court's finding that he was responsible for a quantity of 71 kilograms was not supported by a preponderance of the evidence. Next, he challenges his two-level enhancement for obstruction of justice. Finally, he maintains that his 72–month sentence violates *Apprendi.*

1. Quantity Determination

The presentence report proposed that a total of 52.3 kilograms be attributed to Mr. Toner. This recommendation was based on transactions involving five ounces in July 1994, 42 pounds in July 1994, 26 pounds in December 1994, 17 pounds between February and May 1995, 10 pounds in the spring of 1995, and 20 pounds in July 1995. The first five transactions were recorded in Ms. Crowl's drug records, and the sixth was reflected in the testimony and drug records of Mr. Finney.

Objecting to the recommendation, Mr. Toner contended that he had merely stored minimal quantities of marijuana. In this connection he submitted an unsworn written statement along with favorable results from a polygraph test. (The government would later take a polygraph as well; its results were inconclusive.) With the parties vigorously contesting the applicable quantity of marijuana, the district judge resolved to hear testimony from Ms. Crowl.

After Ms. Crowl testified, the government urged that Mr. Toner be held accountable for marijuana weighing 156 pounds (just over 71 kilograms), a quantity greater than that specified in the presentence report. The revised calculation included 88 pounds noted in one of Ms. Crowl's drug ledgers, three pounds that she said she gave to him and later took back, 31 pounds in another set of records from Ms. Crowl, 20 pounds from Tim Finney, 10 pounds that Ms. Crowl sent Toner via Wayne and Theresa Loose while she was away at college, and four pounds from 1991–1992. The court's use of a figure in the 60–80 kilogram bracket yielded a guideline sentence range of 70 to 87 months. Use of the lower figure that was recommended in the presentence report would have yielded a guideline range of 51 to 71 months, given Mr. Toner's criminal history category.

■ Mr. Toner objects to the judge's acceptance of the greater quantity of drugs. A trial judge's quantity determination, however, is reviewed for clear error. See *United States v. Flowal,* 163 F.3d 956, 959 (6th Cir.1998), *cert. denied,* 526 U.S. 1093, 119 S.Ct. 1509, 143 L.Ed.2d 662 (1999). And "[a] sentencing judge's drug quantity determination is not clearly erroneous if supported by 'competent evidence in the record.'" *Id.*

Competent evidence in the record supported the sentencing judge's decision here. If we were to count only the amount recorded in the first set of Ms. Crowl's records (88.75 pounds), the amount from

the second book (31 pounds), and the 20 pound Finney transaction, the total would be 139.75 pounds, or 63.4 kilograms. Leaving out the amounts challenged most vigorously by Mr. Toner (the 1991–92 transactions and the marijuana sent via the Looses), we would still have a total within the guideline breakpoints (60–80 kilograms) that were used in determining Mr. Toner's sentence. We need not scrutinize the propriety of including the few remaining pounds when their inclusion did not affect the sentence. And we are in no position to second-guess the trial court's decision to credit the testimony given by Ms. Crowl, testimony that adequately supports the result reached in this case.

### 2. Obstruction Enhancement

Mr. Toner makes three arguments regarding the obstruction enhancement: (1) the judge should not have imposed it *sua sponte*; (2) defense counsel had no advance notice that the enhancement might be in the offing; and (3) any false statements were not materially misleading. We find these arguments unpersuasive.

■ First, no authority has been cited in support of the proposition that judges may not impose such enhancements *sua sponte*. Second, although Mr. Toner claims a lack of notice, the possibility of an enhancement surfaced as early as the change of plea hearing. At that hearing Mr. Toner suggested that he had only stored marijuana and had not sold it. The government voiced its disagreement: "[H]e was actually selling it rather than just storing it. I don't think the court needs to resolve that, I'm just trying to put the court on notice we have a difference of opinion as to that." The judge then gave defense counsel this warning: "[I]f he's found to be acting not in good faith and hiding evidence to try to make himself look better than he really is, that

can go badly in terms of sentencing decisions." Defense counsel assured the judge that he had explained this to his client: "We talked about *obstruction points* and those kinds of things." (Emphasis added.) At sentencing, after sifting through Ms. Crowl's detailed testimony and records, the judge was inclined to find obstruction based on Mr. Toner's prior testimony and statements; the judge first made defense counsel aware of his leanings, however, and took a recess in order to allow counsel time to formulate a response. Mr. Toner can thus hardly claim to have been caught off guard by the enhancement.

■ Finally, the misrepresentation was material. The difference between storing and selling marijuana is not insignificant, as the judge explained:

"I think it's a false statement and material statement because if it were believed by the probation officer or the judge disposing of the case by sentence, it would have made a difference. It would have, in other words, undercut the strength of the government's evidence in this regard and perhaps persuaded the sentencing judge that all of the Crowl records and the Crowl testimony and so on and so forth are not to be believed ..."

We find no error here.

### 3. *Apprendi*

In light of *Apprendi*, Mr. Toner claims that the maximum sentence he could properly receive was five years. But unlike Mr. McKinley, who was convicted only of an offense the nature of which was described in the judgment as "conspiracy to possess with intent to distribute marijuana," Mr. Toner pleaded guilty to and was convicted of an offense described in the judgment as "conspiracy to possess with intent to distribute marijuana within 1,000 feet of a school zone." The maximum

penalty for the latter offense, under 21 U.S.C. § 860, is 10 years. That being so, Toner's six-year sentence does not violate the principle articulated in *Apprendi*.

## C. United States v. Spiridigliozzi (No. 99–2104)

After Mr. Spiridigliozzi's change of plea hearing, Spiridigliozzi was released on bond. His bond was subsequently revoked when he tested positive for use of marijuana. At the sentencing hearing, citing the positive test results, the government withdrew its recommendation that Spiridigliozzi be credited with acceptance of responsibility. The government also sought a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) based on its contention that Mr. Spiridigliozzi used a firearm to intimidate Ms. Crowl.

The court heard evidence and entertained argument on both of these issues before resolving them in favor of the government. On appeal, Mr. Spiridigliozzi contends that he should have been given an opportunity to withdraw his guilty plea once the acceptance-of-responsibility credit was withdrawn. He also contends that the court erred in finding that he intimidated Ms. Crowl with a firearm. We address these contentions in turn.

### 1. Withdrawal of Plea

■ At the sentencing hearing, the judge concluded that, although the plea of guilty weighed in favor of acceptance of responsibility, countervailing considerations, such as the positive test for marijuana and the judge's belief that Mr. Spiridigliozzi had sought improperly to minimize his role in the conspiracy, dwarfed the plea. Mr. Spiridigliozzi protests this determination and maintains that he should have been afforded an opportunity to withdraw his plea. We are not persuaded

The plea agreement clearly provided that it was not binding on the court and that "[t]he government reserves the right to withdraw this [acceptance of responsibility] recommendation if new facts come to light that indicate that the defendant has not accepted responsibility within the meaning of the Sentencing Guidelines." Mr. Spiridigliozzi also acknowledged his understanding "that if the Court refuses to follow such a recommendation or request, defendant will not be given the opportunity to withdraw the plea of guilty." At the plea hearing, the judge warned Mr. Spiridigliozzi against, among other things, using drugs or misleading the court. Such conduct, Spiridigliozzi was cautioned, might lead the court to deny the credit for acceptance of responsibility.

Mr. Spiridigliozzi offers no argument for avoiding the language in the plea agreement and the admonition at the plea hearing. Neither does he point to any place in the record where he asked to be allowed to withdraw the plea. We see no error in this regard.

### 2. Firearm Enhancement

■ The firearm enhancement stemmed from two incidents. After Ms. Crowl's arrest in November 1998, Mr. Spiridigliozzi held a sawed-off shotgun in her presence while inquiring whether she was "snitching." Second, believing Mr. Finney to have given information to the authorities, Mr. Spiridigliozzi set off with his shotgun to find Finney. (The search proved unsuccessful.) Based on these facts, the presentence report recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1).

As the district judge properly noted, possession of a firearm is sufficiently connected with a drug offense if it occurs "in the course of attempting to avoid detection or responsibility for that offense."

U.S.S.G. § 1B1.3(a)(1)(B). The standard for applying § 2D1.1(b)(1) is this:

"To obtain an enhancement pursuant to § 2D1.1(b)(1), the government must show by a preponderance of the evidence that the defendant possessed the firearm during the drug-trafficking offense. *See United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991). Once the government satisfies its initial burden of showing that a weapon was present, however, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense." *United States v. Saikaly,* 207 F.3d 363, 368 (6th Cir. 2000).

Ms. Crowl's testimony at the sentencing hearing supported the presentence report's account of the events involving the firearm. Mr. Spiridigliozzi, on the other hand, offered a different version of those events. The judge resolved the credibility issue in the government's favor: "I will find that Crowl's testimony is the more credible and that the Defendant's is not." Basing his decision on Ms. Crowl's demeanor throughout the hearing (as well as on the other occasions when she testified) and on Mr. Spiridigliozzi's concessions during his testimony, the judge concluded that Ms. Crowl had good reason to be intimidated and that the weapon was being used to avoid detection or responsibility for the offense. Mr. Spiridigliozzi did not show at the hearing that it was "clearly improbable" that the weapon was connected to the offense, nor does he now show that the judge's factual findings were clearly erroneous.

The sentences in Mr. Spiridigliozzi's case (No. 99–2104) and in Mr. Toner's case (No. 99–1709) are AFFIRMED. The sentence in Mr. McKinley's case (No. 99–1329) is VACATED, and that case is REMAND-ED for resentencing in accordance with *Apprendi.*