In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1713

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN A. LOTT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:03-CR-30206—**David R. Herndon**, *Judge.*

ARGUED SEPTEMBER 16, 2005—DECIDED MARCH 27, 2006

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* John A. Lott was convicted by a jury of being a felon in possession of a firearm and sentenced to 120 months in prison. Lott challenges the conviction, claiming that his Sixth Amendment right to an impartial jury was violated when a potential juror vouched for the credibility of a government witness during *voir dire* in the presence of the entire venire. Lott also appeals the district court's decision to admit evidence that he dealt in "dummy drugs," even though he was not charged with such a crime. We conclude that neither ground entitles Lott to a new trial and therefore affirm his conviction and sentence.

**I**

On June 28, 2003, Lott was driving a car that did not belong to him in the small town of Sparta, Illinois, when he was pulled over and arrested by local police officers David Dotson and Gary Steele on an outstanding warrant. In a search of the car incident to arrest, the officers discovered underneath the driver's seat a small loaded pistol on top of a plastic bag containing a white powdery substance. Later, back at the police station, Lott explained that the white powder was crushed Allegra, a prescription antihistamine commonly used to treat allergy symptoms, not (as Patrolman Dotson had suspected) cocaine. Although this let Lott off the hook on potential drug charges, he was not so lucky with respect to the gun. On October 22, 2003, a federal grand jury indicted him on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Jury selection for Lott's trial began on March 8, 2004. During *voir dire*, the court asked whether members of the venire knew Officers Dotson and Steele. Prospective juror Randall Valleroy volunteered that he knew Steele and that they had worked together for over 20 years. Upon further questioning, Valleroy referred to Officer Steele as "a very honorable man," explained that his brother had worked for the Sparta police department and had described Steele as an "upright officer," and stated that he believed that Steele "would not purposely try to deceive anybody." Later, during jury selection, the court questioned Valleroy again, inquiring whether he would be able to test Officer Steele's credibility as a witness. Valleroy answered affirmatively, explaining: "I have tested his credibility in the past. He was with my union and I didn't agree with everything he said."

Lott's counsel moved to strike Valleroy for cause, based on Valleroy's long acquaintance with Officer Steele and his strong statements in support of Steele's credibility. The

court denied the motion, explaining that through his responses to the court's follow-up questions, Valleroy had "rehabilitate[d] himself" and "acknowledged that he clearly would test [Officer Steele's] credibility." At the same time, Lott's counsel expressed concern that Valleroy's "super vouch" for Steele had tainted the entire jury panel; nevertheless, she did not move to dismiss the venire on this basis.

In an unusual turn of events, it then came to light that Valleroy had known Lott's mother for many years, but had not realized the connection between her and the defendant because Lott's mother's surname was different from that of her son. Upon learning of this connection, the court immediately struck Valleroy from the jury pool.

The only contested issue at trial was whether Lott knowingly possessed the gun. The government argued that since the bag of white powder was underneath the gun, and Lott possessed and had knowledge of the contents of the bag, he must also have possessed the gun knowingly. Lott retorted that he was driving a car that did not belong to him and had no knowledge of the gun beneath his seat.

Because the bag of white powder was so central to the government's case, Lott also tried to prevent the government from introducing evidence related to the bag. His motion *in limine* and later objection at trial relied on Fed. R. Evid. 404(b), which, except for certain listed exceptions, prohibits introduction of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." In particular, Lott wanted to prevent the government from using the following four items of evidence: (1) the actual bag of white powder, (2) Lott's post-arrest statement identifying the substance as Allegra, (3) Lott's ex-girlfriend's testimony about his dealing in "dummy drugs," and (4) the ex-girlfriend's testimony about his need to use the gun for protec-

tion. The district court denied the motion and later allowed the evidence to be admitted, explaining that the government was not seeking to introduce the evidence through an exception to Rule 404(b), but rather that Lott's possession of the crushed Allegra and his involvement in the sale of "dummy drugs" was "intricately related to [the firearm possession] crime, and therefore, direct evidence of the crime itself."

At trial, both Dotson and Steele testified. Dotson described his discovery of the bag of white powder as well as Lott's statement that the bag contained Allegra rather than cocaine. The government also called Lott's ex-girlfriend as a witness, who testified (as predicted) that Lott told her that he carried the gun "for protection" because "he had ripped some people off" by selling them "dummy drugs." Lott did not testify and called no witnesses. In closing, Lott's counsel argued that the government had failed to prove beyond a reasonable doubt that Lott "knew that that gun was underneath the seat of that [ ] car and intended to and was able to exercise direction and control over that gun."

The jury convicted Lott of the single charge against him, and the district court sentenced Lott to 120 months in prison, three years' supervised release, a $500 fine, and a $100 special assessment.

## II

Since Lott did not move to dismiss the venire at trial, we review the district court's decision only for plain error. *United States v. Robinson*, 250 F.3d 527, 529 (7th Cir. 2001). We must thus determine: "(1) whether there was error at all, (2) if so, whether it was plain, (3) whether the error affected [Lott]'s substantial rights, and (4) whether it seriously affected the fairness, integrity, or public reputation of the proceedings." *Id.*

"The decision whether to dismiss any or all jurors lies in the sound discretion of the trial judge. On review, we are charged with determining whether manifest injustice resulted from the judge's refusal to dismiss all of the jurors which [*sic*] heard the improper comments. . . ." *United States v. Jones*, 696 F.2d 479, 492 (7th Cir. 1982). For "manifest injustice" to result, improper comments must "prevent[ ] . . . other jurors from being fair and impartial." *United States v. Hernandez*, 84 F.3d 931, 936 (7th Cir. 1996). In conducting this analysis, we credit jurors' own affirmations of impartiality, "[a]bsent any reasons to suspect as untrue the jurors' claims of ability to remain impartial despite exposure to an improper third party comment." *United States v. Moutry*, 46 F.3d 598, 603 (7th Cir. 1995).

The district court's decision not to dismiss the jury panel did not amount to an abuse of discretion. It is important in this context to recall that our focus at this stage must be on the impartiality of the jury that actually sat, not on Valleroy, who was struck. See *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000); *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). What the district court had to decide, therefore, was whether Valleroy's statements about Officer Steele's credibility irreparably tainted the remainder of the jury and destroyed its ability to remain fair and impartial. Although Valleroy vouched for Steele's good character, he also remarked that he did not agree with everything Steele had ever said. More importantly, the district court questioned the remaining potential jurors about their ability to remain impartial after Valleroy made his comments. The venire members affirmed to the court their ability to remain impartial, and Lott has presented no evidence that calls into question the truth of their statements.

Even if one thought that the other jurors could not erase Valleroy's comments from their memories and that one or more of them uncritically accepted Valleroy's endorse-

ment of Steele, Lott's argument would still run aground on the third and fourth parts of the plain error test. The evidence against him, particularly the gun found underneath his car seat and on top of the bag of white powder, was powerful. Moreover, Steele's testimony, and thus the matter of his credibility, were not central to the government's case. It was Dotson, not Steele, who was the government's first and key witness, and who testified at length to his search of the car, the discovery of the gun, and Lott's statements after his arrest. In contrast, Steele was the government's last witness; his brief testimony served mainly to corroborate Dotson's account—an account that Lott did not significantly dispute. Thus, even if it was error not to dismiss the venire, Lott's substantial rights were not affected and "it is clear beyond a reasonable doubt that a rational jury would have found [him] guilty absent the error." *Robinson*, 250 F.3d at 530 (internal quotation marks omitted).

Lott fares no better in his argument that the district court abused its discretion in admitting evidence regarding his possession of the bag of white powder and practice of selling "dummy drugs." The district court admitted this evidence as "intricately related to the crime of [being] a felon in possession of a firearm," since the sale of such drugs "made people mad" and required Lott to carry a gun for protection. This rationale is wholly congruent with our prior holdings that "evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Roberts*, 933 F.2d 517, 520 (7th Cir. 1991) (internal quotation marks omitted). See also *United States v. Akinrinade*, 61 F.3d 1279, 1285-86 (7th Cir. 1995) (referring to this as the "intricately related" doctrine). The district court therefore did not abuse its discretion.

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*