UNITED STATES of America

v.

Larry G. ENQUIST.

No. SCR. 90–22(01).

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 13, 1990.

William Grimmer, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Charles A. Asher, South Bend, Ind., for defendant.

## SENTENCING MEMORANDUM

MILLER, District Judge.

Larry G. Enquist has tendered a guilty plea to a misdemeanor charge of possession of methamphetamine, 21 U.S.C. § 844(a), as part of a written plea agreement in which Mr. Enquist agreed to cooperate with the government, which in turn agreed to dismiss an indictment charging him with felony offenses of conspiracy, possession with intent to distribute methamphetamine, and interstate travel in aid of illegal activity, and further agreed not to file additional charges against Mr. Enquist. Because the offense conduct occurred on April 10, 1990, the United States Sentencing Guidelines ("U.S.S.G.") govern Mr. Enquist's sentencing. Except for the acceptance of responsibility issue, neither the government nor the defense objected to the presentence investigation report prepared in this case; accordingly, the court adopts the factual content of paragraphs 1–46 of the presentence report, apart from those portions relating to acceptance of responsibility, as its own findings.

Those findings produce a guideline sentencing range of zero to six months.[1] U.S. S.G. Ch. 5 Part A. The offense to which Mr. Enquist has pleaded guilty carries a term of imprisonment for not more than one year, a fine of not less than $1,000.00 nor more than $100,000.00, and a mandatory special assessment of $25.00.

### A. The Issues

The offense level and guideline range seriously underrepresent the seriousness of Mr. Enquist's criminal conduct. The present charge arises from a search of Mr. Enquist's residence. The search disclosed 150 grams of suspected methamphetamine. Further, when Mr. Enquist was booked, he was found to have 1.25 grams of methamphetamine on his person, giving rise to the charge to which Mr. Enquist has tendered his guilty plea. Finally, the search disclosed three firearms, but the government does not believe that it can prove that those firearms were used in furtherance of the drug offense.

Mr. Enquist originally was charged with conspiracy to manufacture and possess methamphetamine, possession with intent to distribute methamphetamine, and interstate travel in aid of criminal activity. Those charges are to be dismissed as part of Mr. Enquist's plea agreement, leaving the misdemeanor possession charge.

In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A) ], the court may accept the agreement if the court determines, for reasons stated on the record,

---

1. The base offense level is 4, U.S.S.G. § 2D2.1(a)(3), and there are no adjustments to the offense level. Mr. Enquist's 1987 misdemeanor conviction for driving while intoxicated produces one criminal history point, U.S.S.G. § 4A1.1(c), placing him in criminal history category I. Whether Mr. Enquist is entitled to the two-level reduction for acceptance of responsibility provided by § 3E1.1(a) is not relevant to determining the initial guideline range, because the guideline range is the same for offense level 2 as for offense level 4. *United States v. Munster–Ramirez,* 888 F.2d 1267, 1273 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1951, 109 L.Ed.2d 313 (1990); *see also United States v. Tetzlaff,* 896 F.2d 1071 (7th Cir.1990).

that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing.

U.S.S.G. § 6B1.2(a) (Policy Statement).

■ If the "actual offense behavior" is viewed as encompassing the methamphetamine being manufactured [2] as well as the amount in Mr. Enquist's physical possession, the remaining charge would not adequately reflect the seriousness of the actual offense behavior. Consideration of the full amount of methamphetamine found on the premises would produce an offense level of 26. U.S.S.G. § 2D1.1(c)(9). Even disregarding the firearm, offense level 26 would produce a sentencing guideline range of sixty-three to seventy-eight months, far in excess of the twelve-month statutory maximum for the offense of conviction.

Accordingly, the court must determine whether, under these circumstances, it should (a) reject the plea agreement because it insufficiently reflects the seriousness of the offense conduct, (b) accept the plea agreement but depart upward from the guideline range and impose a sentence of more than six months but no more than one year, or (c) accept the plea agreement and impose a sentence within the zero-to-six-month guideline range. The court believes that resolution of these issues turns on the applicable burden of proof.

### B. Acceptance of the Plea

■ The policy statement contained within U.S.S.G. § 6B1.2(a) lends support for the proposition that rejection of the plea is the appropriate course: if the court cannot determine that the simple possession charge adequately reflects the seriousness of Mr. Enquist's actual offense behavior, this policy statement counsels rejection of the plea. For several reasons, however,

the court believes that the plea agreement should be accepted.

At the sentencing hearing, the government forthrightly conceded to the court that its confidential informant was missing at the time it entered into the plea agreement, and had been missing for about seven weeks. Without that individual, the government believed that it could not have opposed successfully a motion to suppress or prove Mr. Enquist's involvement in the manufacturing scheme/conspiracy beyond a reasonable doubt. Available information indicated that Mr. Enquist was not an innocent bystander, but certainly had involvement well below that of his co-defendant, Gibson. Analysis of the cookware seized at Mr. Enquist's residence revealed Gibson's fingerprints all over the items, but only a single fingerprint of Mr. Enquist. The government informed defense counsel of its proof problems, and this plea agreement was the result.

This plea agreement is not an effort to circumvent the Sentencing Guidelines. It reflects the government's belief that it could not prove its original charges at trial beyond a reasonable doubt.

■ Under these circumstances, U.S.S.G. § 6B1.2(a) does not preclude acceptance of the plea agreement.[3] Nothing in the Sentencing Reform Act of 1984 can be read to create a legislative or judicial policy requiring the prosecution to go forward to trial with charges it no longer can prove. Accordingly, the court concludes that when U.S.S.G. § 6B1.2(a) speaks of "actual offense conduct", it must refer to actual offense conduct that the government believes can be proven beyond a reasonable doubt. *See United States v. Adonis,* 891 F.2d 300, 303–304 & n. 5 (D.C.Cir.1989); *United States v. Restrepo,* 698 F.Supp. 563, 565 (E.D.Pa.1988). A different reading makes no sense under the facts of this case. If

---

**2.** Dismissed charges may be considered under the Sentencing Guidelines, as long as the dismissed charges reflect conduct that is part of the same course of action as the offense of conviction. U.S.S.G. § 1B1.8; *United States v. Blanco,* 888 F.2d 907 (1st Cir.1989) (Breyer, J.);

*accord, United States v. Salva,* 894 F.2d 225 (7th Cir.1990).

**3.** Because § 6B1.2(a) is a policy statement rather than a guideline, it is uncertain whether it should be read to have preclusive effect in any case.

the government's assessment of its proof was accurate, rejection of the plea agreement would lead to a trial at which Mr. Enquist would be acquitted of the felony offenses and convicted of the misdemeanor offense, leaving the court in precisely the same position as if the plea had been accepted. The statutory purposes of sentencing would not be undermined by acceptance of the plea.

■ Counsel's candor at the sentencing hearing produces an additional issue, as well. Although the confidential informant was AWOL at the time of the plea negotiations, he or another critical witness has resurfaced. Today, perhaps, the government's ability to prove its case beyond a reasonable doubt has improved. Arguably, the court should consider this development in determining the extent of the offense conduct that the government can prove beyond a reasonable doubt. As counsel for Mr. Enquist noted at the sentencing hearing, however, this argument would find unsympathetic ears were the shoe on the other foot: had Mr. Enquist pleaded guilty to the felony charges before the informant vanished, the erosion of the government's proof would provide no grounds to withdraw his guilty plea.

The government has not moved for relief from the plea agreement based on the emergence of its witness, and such a motion would seem fundamentally unfair to the defense in any event. The court cannot, by rejecting the plea agreement, act as the government's surrogate to accomplish that which would be denied if sought by the government. With respect to issues such as this, the court must evaluate the plea agreement in light of circumstances existing at the time the agreement was tendered to the court.

With these thoughts in mind, the court concludes that the remaining charge under the plea agreement adequately reflects the seriousness of the actual offense behavior that can be proved beyond a reasonable doubt and that accepting the agreement will not undermine the statutory purposes of sentencing. The court accepts the plea agreement.

## C. Departure

■ The government's inability to prove the original charges beyond a reasonable doubt does not govern the determination of whether to depart based on the other criminal conduct. Sentencing factors need not be proven beyond a reasonable doubt; proof by a preponderance of the evidence is sufficient for sentencing purposes. *United States v. Alston,* 895 F.2d 1362, 1372–1373 (11th Cir.1990).

### 1. Whether to Depart

■ The materials before the court suffice to establish that Mr. Enquist was involved, although not as a profiteer or originator, in the scheme that produced the 150 grams of methamphetamine found in his residence. For the reasons discussed above, the guideline range of zero to six months falls far short of reflecting the seriousness of that conduct.

That the guideline range strikes the sentencing court as inadequate to reflect the seriousness of the offense conduct ordinarily provides no ground for departure from the guideline range. *United States v. Lopez,* 875 F.2d 1124, 1126 (5th Cir.1989). Courts may depart only for circumstances not sufficiently considered by the Sentencing Commission. 18 U.S.C. § 3553(b); U.S. S.G. § 5K2.0; *United States v. Schmude,* 901 F.2d 555 (7th Cir.1990); *United States v. Missick,* 875 F.2d 1294, 1300–1302 (7th Cir.1989). The Sentencing Reform Act's purposes are ill-served if a court departs simply because it thinks the guideline range too high or too low.

On the other hand, a sentencing court has the authority to depart if unusual circumstances, not adequately considered by the Commission, remove a case from the "heartland" of cases of its sort. U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b); *see, e.g., United States v. Ferra,* 900 F.2d 1057, 1061 (7th Cir.1990). The guideline section applicable to Mr. Enquist's crime, U.S.S.G. § 2D2.1(a)(3), does not consider the defendant's involvement in a scheme to manufacture and distribute significant amounts of the drug possessed. Another guideline

provision, U.S.S.G. § 2D1.6, which addresses the offense of using a communications facility for the distribution of a controlled substance, similarly ignores such circumstances; courts have upheld upward departures from the resultant guideline range based on quantity and intent to distribute. *See, e.g., United States v. Williams,* 895 F.2d 435 (8th Cir.1990); *United States v. Strong,* 891 F.2d 82 (5th Cir.1989); *United States v. Correa–Vargas,* 860 F.2d 35 (2nd Cir.1988). That rationale supports an upward departure in this case, as well.

Other factors counsel against departure. Most importantly, Mr. Enquist has accepted responsibility for his conduct and assisted government investigators. At the time of the search, he escorted the officers to his home. He has remained drug-free throughout his pretrial release. He has twice met with government investigators and provided truthful information. These acts support a finding of acceptance of responsibility. *See* U.S.S.G. § 3E1.1, *Application Note* 1(a), (c). The probation officer, uninformed of Mr. Enquist's cooperation with the government, believed no finding of acceptance of responsibility was appropriate, largely because Mr. Enquist, on advice of his attorney, declined to provide his version of the offense to the officer. At the hearing, counsel for both sides explained that they were concerned that, in the absence of any provision in the plea agreement to the contrary, statements to the probation officer could be used to enhance Mr. Enquist's sentence. *See generally* U.S.S.G. § 1B1.8. Under all these circumstances (particularly those of which the probation officer was not informed), the court does not believe that the refusal to provide a version of the offense to the probation officer defeats a finding of acceptance of responsibility.

Even with due regard for Mr. Enquist's acceptance of responsibility, however, the court believes that the circumstances of this case take it beyond the "heartland" drug possession cases for which the Sentencing Commission crafted U.S.S.G. § 2D2.1(a)(3). Mr. Enquist's case is not one of simple possession of methamphetamine. He was involved with others in a scheme to manufacture the drug in quantities significant to create a compelling inference of intent to distribute. Departure is warranted.

### 2. Extent of Departure

■ The court must structure any departure. Although the Guidelines provide no direction for departure based on factors other than the inadequacy of the defendant's criminal history, the Seventh Circuit has provided such guidance:

> In departing the judge should compare the seriousness of the aggravating factors at hand with those the Commission considered.... So if possessing a gun during a sale elevates the offense by two levels, the judge might conclude that buying a gun with drugs elevates the offense by four levels, an upward 'departure' of two levels. An alternate method of computing upward departures is to treat the aggravating factor as a separate crime and ask how the defendant would be treated if convicted of it.

*United States v. Ferra,* 900 F.2d at 1062. The second approach is more sensible here. Were Mr. Enquist convicted of the "aggravating factor"—participation in a scheme to possess with intent to distribute 150 grams of methamphetamine—the Guidelines would produce a base offense level of 26. U.S.S.G. § 2D1.1(c)(9). That offense level would be reduced by two levels for his acceptance of responsibility, U.S.S.G. § 3E1.1(a), and (giving Mr. Enquist full benefit of the doubt) by as many as four levels for his minimal participation. U.S.S.G. § 3B1.2(a). An adjusted offense level of 20, coupled with a Criminal History Category of I, would produce a guideline range of thirty-three to forty-one months, approximately triple the maximum sentence for the offense of conviction.

For these reasons, the court concludes that it should depart upward to the statutory twelve-month maximum.

### D. The Sentence

Accordingly, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Larry G. En-

quist, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of twelve (12) months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of one (1) year. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in U.S.S.G. § 5B1.4(a), and shall comply with the following additional conditions:

(1) the defendant shall not possess a firearm or other dangerous weapon during the period of supervised release;

(2) the defendant shall participate in a program for the treatment of drug and/or alcohol dependency, which may include urine testing, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer; and

(3) the defendant shall perform ten hours of community service per month as directed by the probation officer.

Because the defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the Sentencing Guidelines, the court imposes no fine, but imposes the foregoing requirement of community service during his supervised release as an alternative sanction pursuant to U.S.S.G. § 5E1.2(f).

It is further ordered that the defendant shall pay to the United States a special assessment of $25.00, which shall be due immediately.

Without objection from the government, the court finds by clear and convincing evidence that the defendant poses no risk of flight or danger to the community or any other person; accordingly, the court affords the defendant the privilege of voluntary surrender. The defendant is continued on pretrial release subject to the conditions heretofore established and shall report to the institution designated by the Bureau of Prisons and as directed by the United States Marshal by noon on October 15, 1990.