**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jason J. GREENER, Defendant–Appellant.**

**No. 91–3899.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1992.

Decided Nov. 6, 1992.

Larry Wszalek (argued), Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

William Ginsberg, Andrew M. John, Rich B. Meier (argued), Mandell & Ginsberg, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

The issue is whether the district court abused its discretion when it rejected the first two plea agreements between the government and the defendant Jason J. Greener before accepting a third plea agreement. We hold that it was not an abuse of discretion.

*Facts and Procedure*

On April 17, 1991, Jason J. Greener was named in a four-count indictment in the Western District of Wisconsin. Count I charged the defendant with unlawful possession of a Remington 870 shotgun and a SM–10 machine gun in violation of 26 U.S.C. § 5861(d). Count II charged the defendant with unlawfully transferring two destructive devices, two hand grenades, in violation of 26 U.S.C. § 5861(e). Count III charged the defendant with unlawfully transferring a firearm in violation of 26 U.S.C. § 5861(e). Count IV charged the defendant with unlawfully engaging in the business of dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A).

The facts are not in dispute. The investigation began in December 1990 when the defendant traded three firearms to a confidential informant in return for a machine gun at his parents' home. In January 1991, the defendant met with an undercover Alcohol, Tobacco, and Firearm agent and sold the agent a pistol at the defendant's home. Defendant offered to sell the agent seven additional firearms and two homemade hand grenades. Several days later, the defendant and the agent went to the defendant's parents' home to look at firearms and hand grenades for sale. The undercover agent bought a firearm and two hand grenades. Shortly thereafter, a federal search warrant was executed on the defendant's apartment and his parents' home. The various firearms that the defendant had offered to sell and evidence of the sale of other firearms were recovered pursuant to the warrant. The defendant was nineteen years of age when the offenses occurred and had no prior criminal convictions.

The parties entered into the first of three plea agreements on July 31, 1991. The defendant was to plead guilty to Count IV of the indictment in exchange for the dismissal of the other counts. The presentence report calculated the adjusted offense level for this count to be twelve with two points deducted for acceptance of responsibility. The guideline imprisonment range for a total offense level of ten points

is six to twelve months for a defendant with no prior criminal history.

The district court rejected this plea agreement on September 26, 1991. The district court stated that it could not accept the plea agreement because the offense of conviction would not adequately represent the defendant's criminal conduct. The district court stated that work sheets prepared by the probation office on Counts I, II, and III indicated offense levels beginning at eighteen points for those counts. The court stated that Counts I, II, and III were apparently far more serious than Count IV. The court indicated that to accept the count with the least points available would be an abuse of the sentencing guidelines and undermine the statutory purpose of sentencing.

The parties entered into a second plea agreement on October 4, 1991. Under this agreement, the defendant would plead guilty to Count I of the indictment. Calculation of the sentencing guidelines for this count of unlawful possession depended upon whether the base offense could be increased by points for distribution of the firearms, the number of firearms involved, and whether any of the firearms were stolen or had altered serial numbers. The district court found that the cross reference to section 2K2.2 in section 2K2.1(c)(1) of the Sentencing Guidelines did not apply here since the guns named in the possession count of the indictment were not offered for sale by the defendant. Therefore, the enhancements found in section 2K2.2 did not apply to the calculation of the offense level for Count I. Section 2K2.2 would apply, however, to Counts II and III and raise their offense levels to twenty-three or twenty-four points. The court calculated Count I's offense level to be eighteen points.

The district court rejected the second plea agreement for the same reasons it rejected the first one. The court stated that acceptance of the plea to Count I and the dismissal of the other three counts would "substantially and significantly undermine the statutory purposes of sentencing." The court recognized that Counts II and III were more serious than Count I. The court reasoned that Count I would not adequately reflect the seriousness of the actual offense behavior.

The third plea agreement called for the defendant to plead guilty to Count II and for the government to dismiss the other counts. The district court accepted this third agreement. The district court calculated that Count II's total offense level was twenty-two points after adjustments for the number of firearms involved, the obliteration of serial numbers on a firearm, and the defendant's acceptance of responsibility. The guideline imprisonment range for this offense was forty-one to fifty-one months for a defendant with no prior criminal history. The district court accepted the plea agreement stating that it "adequately represents the Defendant's criminal conduct and does not undermine the sentencing guidelines and the statutory purposes of sentencing." The court sentenced the defendant to forty-one months in prison and three years of supervised release.

*Analysis*

We evaluate the district court's rejection of the two plea agreements under the abuse of discretion standard. *See* Fed. R.Crim.P. 11 advisory committee's note (1974); *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). This is a deferential standard of review, and we will not reverse the district court's decision if any reasonable person could agree with the district court. *United States v. Abayomi*, 820 F.2d 902, 905 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987).

We begin by noting that "[t]here is ... no absolute right to have a guilty plea accepted." *Santobello*, 404 U.S. at 262, 92 S.Ct. at 498. The district court may accept or reject a guilty plea in the exercise of its sound discretion. *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir.1982). *Cf. United States v. Cox*, 923 F.2d 519, 524 (7th Cir.1991) (district court has the discretion to reject an *Alford* [*North Carolina v. Alford*, 400 U.S. 25, 27 L.Ed.2d 162 (1970)] plea). Nevertheless, it is widely accepted that our criminal justice system depends

upon the plea agreement process. *See Santobello,* 404 U.S. at 260–61, 92 S.Ct. at 498. Nearly 90% of all federal criminal cases are resolved by guilty pleas, many of these under a plea agreement. United States Sentencing Commission, *Guidelines Manual,* ch. 1, intro. (1991).

The sentencing judge plays an important role in the plea bargaining process. With the enactment of the sentencing guidelines, Congress directed judges "to examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines." S.Rep. 225, 98th Cong., 1st Sess. 63, 167 (1983). One concern with the sentencing guidelines is that they may have transferred too much discretion away from the court to the prosecutor. Report of the Federal Courts Study Committee, April 2, 1990, *reprinted in,* 2 Federal Sentencing Reporter 232, 243 (1990). Of course, prosecutors have always had the responsibility of determining what charges shall be brought. But with the sentencing guidelines emphasis on the offense of conviction as a starting point in calculating the offense level, prosecutors may be able to circumvent the guideline sentence in their plea bargaining with a defendant. *See* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct:  The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 498–99 (1990).

The Sentencing Commission did not intend to make any major changes in plea bargaining practices. U.S.S.G. ch. 1, Part A, policy statement (1991). Instead the Commission provided guidance through its policy statements found in Chapter 6 (Plea Agreements) of the U.S.S.G. The policy statement titled Standards for Acceptance of Plea Agreements provides:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges … the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing.

U.S.C.G. § 6B1.2(a). The commentary to this section explains that "when the dismissal of charges is contingent upon the acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines." U.S.S.G. § 6B2.2, commentary. Therefore, the sentencing guidelines place a great responsibility on the sentencing judge to use his or her discretionary authority when examining and inspecting plea agreements pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Albert W. Alschuler, *Departures and Plea Agreements Under the Sentencing Guidelines,* 117 F.R.D. 459, 475 (1987); Wilkins, Jr. & Steer, *supra,* at 500. The sentencing judge must ensure that the main objectives of the sentencing guidelines, consistency and certainty in sentencing, are not undermined by plea bargaining between the parties. "Certainty in sentencing cannot be achieved when prosecutors have broad discretion to substitute one charge for another in plea bargaining." Alschuler, *supra,* at 475.

■ The district court did not abuse its discretion when it concluded that a guilty plea to Count IV alone or Count I alone would not adequately represent the defendant's criminal conduct and would undermine the sentencing guidelines. The first plea agreement required the defendant to plead guilty to unlawfully engaging in the business of dealing in firearms without a license in Count IV of the indictment. At the sentencing hearing on this first agreement, the district court stated it would be an abuse of the guidelines to attempt to minimize the defendant's sentence by accepting a guilty plea to Count IV. The district court was concerned with the serious criminal conduct involved in the other counts in the indictment concerning the defendant's possession of illegal firearms and transfer of stolen firearms and destructive devices. The district court found these other counts were "far more serious than Count IV." There were no reasons

offered by the government in support of this agreement other than the defendant's youth and lack of any prior convictions. We cannot find that the district court abused its discretion because it closely examined the plea agreement and the defendant's actual offense behavior when deciding to reject the agreement.

The second plea agreement contemplated the defendant pleading guilty to Count I of the indictment for the unlawful possession of firearms. This possession count, the district court held, would not be subject to Section 2K2.2 of the sentencing guidelines and its additional points based upon the number of firearms unlawfully distributed. Although Counts I, II, and III have the same base offense levels, the sentence would be computed differently for Count I because it was not subject to Section 2K2.2. Therefore, this count could be considered more narrow in comparison to the unlawful transfer of firearms and destructive devices in Counts II and III which are subject to Section 2K2.2. The government stated the possession count was the most serious, but the district court disagreed with that argument, especially in light of the defendant's keen interest in guns and his apparent intent to distribute guns. Because there was no problem proving the defendant's illegal conduct, the district court found that "the entire record is one that does not allow this Court even the choice of a choice ... it must conclude that the plea agreement will substantially and significantly undermine the statutory purposes of sentencing." We will not hold that the rejection of the second plea agreement for these stated reasons was an abuse of discretion by the district court.

The defendant argues that the district court erroneously believed it had to reject any plea agreement which did not result in the highest sentencing guideline range possible under the indictment. We reject this interpretation of the district court's decision. Nowhere in the record does the district court suggest that it would only accept a plea resulting in the highest possible guidelines range. The district court, instead, carefully scrutinized the defendant's conduct and compared it with the proposed plea agreements. The district court correctly considered the agreements' impact on the sentencing guidelines and the statutory purpose of sentencing and found that the agreements failed to adequately reflect the defendant's actual offense conduct. *See United States v. Castro–Cervantes*, 927 F.2d 1079, 1082 (9th Cir.1990) (plain implication of U.S.S.G. § 6B1.2(a) is that the sentencing court should not accept a plea agreement that does not adequately reflect the seriousness of defendant's behavior); *United States v. Plaza–Garcia*, 914 F.2d 345, 348 (1st Cir.1990) (court should consider U.S.S.G. § 6B1.2(a) and accept a plea agreement only when it believes it reflects the defendant's conduct); *United States v. Enquist*, 745 F.Supp. 541, 543 (N.D.Ind.1990) (district court did not reject a plea agreement for insufficiently reflecting the seriousness of the offense conduct when the government could not establish its burden of proof for the more serious charged felony).

*Conclusion*

We find that the district court not only did not abuse its discretion, but exercised its discretion well.

AFFIRMED.