In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3519, 00-3520, 00-3747, 00-3781 &
01-1929

United States of America,

Plaintiff-Appellee,

v.
Douglas Martin, Melvin Alicea, Hector Carrasco,
Victor Alicea, and Victor Matias, Jr.,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 00 CR 23--John C. Shabaz, Judge.

Argued March 1, 2002/*--Decided April 19, 2002


   Before Flaum, Chief Judge, Bauer and
Harlington Wood, Jr., Circuit Judges.

   Bauer, Circuit Judge.  The defendants
were engaged in a conspiracy to
distribute cocaine in Sauk County,
Wisconsin./1 Several defendants elected
to go to trial and were found guilty by
their respective juries; others chose to
plead guilty. The district court imposed
sentences on each defendant. Almost all
of the five defendants before this court
appeal some aspect of their sentences,
and the others raise a litany of
additional issues related to their
trials. For the following reasons, we
affirm the verdicts and sentences for all
five defendants.

BACKGROUND

   The facts involve a rather long and
convoluted series of meetings,
statements, and transactions, most of
which might make for colorful background
information about the drug trade in
Wisconsin, but are not pertinent to the
issues on appeal. Therefore, we set forth
only the facts necessary to each issue
raised. Because some of the defendants
appeal the same issues we will proceed by
addressing each point of error raised and
note the resulting application of law to
each defendant's individual challenge.

ANALYSIS

A. Apprendi Violations

   The defendants did not timely raise Apprendi objections below, thus the arguments were forfeited and we review only for plain error. See, e.g., United States v. Cooper, 243 F.3d 411, 415-16 (7th Cir. 2001), cert. denied, 122 S.Ct. 64 (2001). To determine if there was plain error we apply a four-part test: "(1) whether there was error at all, (2) if so, whether it was plain, (3) whether the error affected . . . substantial rights, and (4) whether it seriously affected the fairness, integrity, or public reputation of the proceedings." United States v. Robinson, 250 F.3d 527, 529 (7th Cir. 2001), cert. denied, 122 S.Ct. 215 (2001). The defendants don't make it over the first hurdle: "whether there was an error at all." Robinson, 250 F.3d at 529.

   1.  Hector Carrasco (00-3747)

   Hector Carrasco was indicted on a single count, for conspiring to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. sec. 846. The indictment did not state the amount of drugs Carrasco conspired to distribute, although it did state the substance, cocaine. The jury found Carrasco guilty of the offense as charged in the indictment. Carrasco was sentenced to 97 months (just over 8 years) in prison and 3 years supervised release.

   2.  Victor Alicea (00-3781)

   Victor Alicea was indicted on two counts: for conspiring to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. sec. 846, and for distributing a controlled substance in violation of 21 U.S.C. sec. 841(a)(1). The indictment did not state the amount of drugs Victor Alicea distributed or conspired to distribute, but it did name cocaine as the substance distributed. The jury found Victor Alicea guilty of both offenses. Victor Alicea was sentenced to two concurrent sentences of 120 months (two concurrent 10-year terms, one for each count) and two concurrent 3- year terms of supervised release (one for each count).

Since it was decided, Apprendi v. New Jersey, 530 U.S. 466 (2000), has spawned an endless number of appeals by defendants seeking to determine and expand its scope. These defendants contend Apprendi requires the amount of cocaine they conspired to distribute be charged in the indictment and proven to the jury beyond a reasonable doubt. In this case, the district court in the sentencing phase found Carrasco accountable for 1,443.35 grams of cocaine and Victor Alicea accountable for 1,626 grams of cocaine by a preponderance of the evidence. Carrasco accurately notes that the penalty provisions in section 841(b) are based on drug quantity. See 21 U.S.C. sec. 841(b) (providing for penalties ranging from five years to life depending on the type and amount of drugs involved and if serious injury or death resulted from the use of the substances). Thus, possessing different types and amounts of drugs can alter the sentence a defendant faces. Id. Carrasco also correctly observes that drug quantity under Apprendi is an element--though not in the technical sense of the word--of the offense in section 841(b) that the government should specify and prove. Apprendi, 530 U.S. at 490; United States v. Mietus, 237 F.3d 866, 874 (7th Cir. 2001); United States v. Bjorkman, 270 F.3d 482, 490-92 (7th Cir. 2001) (per curiam) (holding that "Apprendi does not rewrite or change the elements of any federal offense; its does, however, determine who must make particular decisions, and what the burden of persuasion must be."); but see United States v. Sheppard, 219 F.3d 766, 767-69 & n.3 (8th Cir. 2000) (noting that quantity is an element of a sec. 841 offense, but there is likely no Apprendi problem if the sentence received is within the "statutory maximum penalty for sec. 841 offenses involving any quantity of a Schedule II controlled substance") (emphasis in original). In any event, Carrasco and Victor Alicea's arguments in this situation are unavailing.

Apprendi only requires "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). If a drug amount is not charged in the indictment and proven

beyond a reasonable doubt, "the statutory maximum under sec. 841(b) is to be determined without making any reference to drug amount." United States v. Jones, 245 F.3d 645, 647-48 (7th Cir. 2001); United States v. Westmoreland, 240 F.3d 618, 632 (7th Cir. 2001). Thus, "when a defendant's sentence does not exceed 20 years imprisonment--the maximum under sec. 841(b) for possessing/distributing the smallest amount of cocaine--Apprendi is irrelevant." Robinson, 250 F.3d at 529. There is no error, plain or otherwise, if the defendants' sentences do not exceed twenty years. Id.

Hector Carrasco received just over 8 years and Victor Alicea drew two concurrent sentences of 10 years. Neither of the sentences exceed the maximum sentence allowed (20 years) under section 841(b) when an amount of cocaine is not charged and proven. See, e.g., id.; Jones, 245 F.3d at 648-50. Could the indictment have listed the amounts? Certainly, but it is not required under Apprendi. See, e.g., Robinson, 250 F.3d at 527; Jones, 245 F.3d at 648-50. Should the indictment have listed the amounts? Probably, because it would have undoubtedly reduced the defendants' avenues of appeal and allowed their sentences to be increased (based on drug amounts)./2 See United States v. Brough, 243 F.3d 1078, 1079-80 (7th Cir. 2001), cert. denied, 122 S.Ct. 203 (2001) (noting that "a post-Apprendi indictment should specify . . . the events listed in sec. 841(b) [amount and type of drugs] on which the prosecutor relies to establish the maximum sentence.") (emphasis added); see also Bjorkman, 270 F.3d at 491-92 (explaining the difference between the "must" prove elements in sec. 841(a) and "should" prove drug quantity in sec. 841(b)). Must the indictment list the amounts and the government prove them beyond a reasonable doubt? No, not when the sentence a defendant receives does not exceed the statutory maximum of 20 years for possessing or distributing the smallest amount of a Schedule II controlled substance. See, e.g., Robinson, 250 F.3d at 527; Jones, 245 F.3d at 648-50.

Victor Alicea, in addition to the argument advanced above, asserts that 21 U.S.C. sec. 841(b) is unconstitutional. We have already determined that Section

841(b) is not unconstitutional. Brough, 243 F.3d at 1079-80 ("we now hold, that there is no constitutional defect in the design of sec. 841, and that there is no impediment to convictions under the statute as written."); see also United States v. Collins, 272 F.3d 984, 988-89 (7th Cir. 2001).

## B. U.S.S.G. sec. 2D1.1 Drug Quantity Determination

We review a district court's factual findings in applying the Sentencing Guidelines for clear error. United States v. Williams, 272 F.3d 845, 851-52 (7th Cir. 2002), cert. denied, 122 S.Ct. 1339 (2002); United States v. Joiner, 183 F.3d 635, 640 (7th Cir. 1999). Under this familiar standard, we review the district court's findings to determine if there is any evidence in the record to support the findings, and will reverse only if we have a "'firm and definite conviction that a mistake has been made.'" E.g., United States v. Miner, 127 F.3d 610, 614-15 (7th Cir. 1997) (citation omitted). Reasonable estimates of drug amounts based on the Presentence Investigation Report (PSR), testimony, and other evidence are permissible, while speculation is not. Westmoreland, 240 F.3d at 630-32; Joiner, 183 F.3d at 640; United States v. Jarrett, 133 F.3d 519, 530 (7th Cir. 1998).

### 1. Douglas Martin (00-3519)

Martin argues that he never "intended" or "agreed" to provide cocaine to Lisa Templin, and he asserts that any comments he made to that effect were the result of one too many drinks or mere boasting. (One frequently leads to the other in many areas of life.) The district court found 544.06 grams of cocaine attributable to Douglas Martin and sentenced him to 60 months (5 years) in prison and 3 years supervised release. The finding was based on the PSR, conversations Martin had with others, and remarks he made involving Templin. Martin joined the conspiracy late, but moved up in the ranks rather quickly to become Victor Matias, Jr.'s "right hand man." Victor Matias, Jr. was found to have distributed some 7.7 kilograms of cocaine, but the district court took into account Martin's late arrival and

attributed only a portion of that amount to him. Martin told Templin that he could obtain 500 grams of cocaine from Victor Matias, Jr. The district court found this statement credible because Matias, Jr. dealt large amounts of cocaine and Martin was his very close assistant. It was not clear error for the district court to find Douglas Martin accountable for at least 544.06 grams of cocaine. See Westmoreland, 240 F.3d at 630-32.

C. U.S.S.G. sec. 2D1.1(b)(1) Possession of a Dangerous Weapon

The district court's application of a sentencing guidelines enhancement is also reviewed for clear error. See United States v. Smith, 280 F.3d 807, 810 (7th Cir. 2002); Bjorkman, 270 F.3d at 493; United States v. Berthiaume, 233 F.3d 1000, 1002 (7th Cir. 2000); United States v. Cain, 155 F.3d 840, 843 (7th Cir. 1998). Substantial deference is accorded to findings based on credibility, which are almost never clear error. See, e.g., United States v. Hickok, 77 F.3d 992, 1007 (7th Cir. 1996).

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels." U.S.S.G. sec. 2D1.1(b)(1). Application Note 3 further provides:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. sec. 2D.1.1, Application Note 3. Based upon the language in section 2D1.1, we have held that the government need only demonstrate, by a preponderance of the evidence, that the defendant possessed the weapon during the relevant period of drug activity. Bjorkman, 270 F.3d at 492-93. And "once the Government meets its burden, the defendant must demonstrate that it was clearly improbable that the weapon was connected to the offense." United States v. Booker, 248 F.3d 683, 689 (7th Cir. 2001);

Bjorkman, 270 F.3d at 492-93.


### 1. Melvin Alicea (00-3520)

To the government's knowledge the drug conspiracy began in 1994 and lasted until 1999. Bureau of Alcohol Tobacco & Firearms (ATF) records established that Melvin Alicea purchased fourteen firearms (thirteen handguns and one rifle) between 1995 and 1997. Melvin Alicea showed one of his customers, Perry Zubeck, one of the handguns he owned. Melvin also threatened another customer, who he heard had been talking to the police, stating, "[talking] was a good way to get a bullet in the head."

### 2. Victor Alicea (00-3781)

Victor Alicea joined the conspiracy in 1995, and ATF records showed that Victor Alicea bought a handgun in 1996. A stainless steel .9 mm Ruger handgun with a laser-aiming device was recovered from Victor Alicea's home. During the sentencing hearing Adam Young, a regular customer of Victor Alicea's since 1995, testified that during one occasion when he went to Alicea's home, Alicea showed Young a stainless steel Ruger handgun with a laser-aiming device. The gun was later identified as the same one recovered from Alicea's home.

The government argued that Victor Alicea showed Young the weapon to deter Young and anyone else from robbing him. Alicea asserts that there is no "nexus" between the firearm and the drug conspiracy because no evidence establishes that the weapon was "used" during the conspiracy. In his brief Victor Alicea states that no drugs were recovered from his home and that there was no ammunition found in the weapon. Melvin Alicea, in a similar vein, argues that there is no evidence he "brandished" or "displayed" a weapon during a drug transaction.

The defendants' arguments misapprehend the government's burden; the government need only demonstrate that the defendant possessed a weapon during the drug conspiracy. See, e.g., Booker, 248 F.3d at 689. Then it is up to the defendant to refute this claim by establishing that it was clearly improbable that the weapon was connected to the offense. Bjorkman,

270 F.3d at 493. Although the gun was not found loaded or next to drugs at the time it was recovered, that does not establish that the weapon had no connection to the conspiracy. See United States v. Adams, 125 F.3d 586, 596 (7th Cir. 1997) (holding "the government is not required to show that the weapon was present during a specific drug trafficking offense."); Cain, 155 F.3d at 843-44 (rejecting the defendant's argument that his possession of "the gun was unrelated to the drug conspiracy"); see also United States v. Cantero, 995 F.2d 1407, 1412 (7th Cir. 1993) (noting that "drug dealers often carry weapons to protect themselves and their large amounts of drugs and cash."). The district court found that both Victor Alicea and Melvin Alicea did posses weapons during the relevant period of conduct and it was not clearly improbable that the weapons were connected with the drug conspiracy. There is no clear error in these findings.

D. U.S.S.G. sec. 3C1.1 Obstruction of Justice

In determining if the sentencing enhancement was properly applied we review the district court's findings of fact for clear error. E.g., United States v. Carrera, 259 F.3d 818, 831 (7th Cir. 2001). The prosecution must establish that the enhancement is applicable by a preponderance of the evidence. United States v. Ewing, 129 F.3d 430, 434 (7th Cir. 1997). Section 3C1.1 provides:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. sec. 3C.1.1.

1. Douglas Martin (00-3519)

Lisa Templin, after being confronted by federal agents about her involvement in the conspiracy, agreed to cooperate with the agents and make controlled buys in

1999. Templin set up a controlled buy, and the following day Victor Matias, Jr.'s home was searched and he was arrested. Evidently Matias, Jr. put two and two together and called Hector Carrasco, told Carrasco "Lisa" had informed on him, and that Carrasco should tell her to "knock it off." After posting bond Victor Matias, Jr. and Douglas Martin visited Lisa Templin at home. Templin's roommate answered the door and Martin restrained her while Matias, Jr. confronted Templin.

Martin argues that "there is no direct proof" that he was at the residence because Lisa Templin only relayed what her roommate told her happened and did not see Martin herself. "[T]he Federal Rules of Evidence do not apply at sentencing hearings" and the judge may consider information that would not be admissible at trial, including uncorroborated hearsay. Smith, 280 F.3d at 810. The district court concluded that Martin attempted to obstruct justice by aiding and abetting Matias, Jr.'s efforts to intimidate Lisa Templin and by restraining Templin's roommate. See U.S.S.G. sec. 3C1.1, Application Note 9 ("Under this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."). The district court's findings are sufficient to impose the enhancement and there was no clear error.

2. Melvin Alicea (00-3520)

In 1997, Michael Sutton was a cooperating informant who made a series of controlled buys from the defendants wearing a recording device. In June 1997, Melvin Alicea "heard" that Sutton might have "said something [to the police]" about their deals. Melvin told Sutton that "[talking to the police] was a good way to get a bullet in the head." Melvin was found to have obstructed the investigation by threatening Sutton.

Melvin argues that in order for the guideline to apply he would have to know or believe than an investigation is underway, otherwise there is no "willful" violation. For support he cites United States v. Oppendahl, 998 F.2d 584, 586

(8th Cir. 1993), which held the term "'willfully' [in U.S.S.G. sec. 3C1.1(A)] should be reserved for the more serious case, where misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway." However, this circuit has already ruled that knowledge of an investigation is not required for a "willful" violation to occur. United States v. Snyder, 189 F.3d 640, 648 (7th Cir. 1999) ("It is clear, however, that a defendant need not know that he is under investigation at the time of the obstructive conduct."); United States v. Schmidt, 47 F.3d 188, 192 n.3 (7th Cir. 1995); United States v. Polland, 994 F.2d 1262, 1269 (7th Cir. 1993); accord United States v. Jenkins, 275 F.3d 283, 288-89 (3d Cir. 2001). The term "willful" does not mean "knowing" or "aware," it means "intentionally" or "deliberately." Jenkins, 275 F.3d at 287-88 (holding that "[i]n view of the language, structure, and context of U.S.S.G. sec. 3C1.1, we believe the ordinary meaning of 'willfully' is 'deliberately or intentionally'"); cf. Ewing, 129 F.3d at 434-35. Thus, a defendant does not need to "know" or be "aware" that an investigation is underway, rather he need only "intentionally" or "deliberately" impede or attempt to obstruct justice for the enhancement to apply. Jenkins, 275 F.3d at 287-88.

   Accepting Melvin Alicea's contention would allow defendants to threaten witnesses and informants with impunity if they simply argue they did not know the police were attempting to catch them conducting dangerous illegal activity. The obstruction of justice enhancement in section 3C1.1 is not dependent on a defendant's subjective knowledge and its scope is not so narrow; otherwise every defendant would be able to avoid its imposition by claiming lack of knowledge. See Snyder, 189 F.3d at 648-49; Polland, 994 F.2d at 1269; U.S.S.G. sec. 3C1.1 (providing that the enhancement shall be applied if: "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction") (emphasis added); U.S.S.G. sec. 3C1.1, Application Note 4 (listing conduct the

adjustment applies to including: "(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so") (emphasis added); Ewing, 129 F.3d at 435.

Moreover, Oppendahl provides little support for Melvin Alicea's proposition considering the district court's finding that Melvin made the threat because he believed an investigation was underway. Oppendahl, 998 F.2d at 586 (conceding "misconduct occurs [when a defendant obstructs or attempts to obstruct justice] . . . with a correct belief that an investigation is probably underway"). As the district court noted, Melvin Alicea made a threat to "the confidential informant, [or] at least the person to whom Mr. Alicea believed to be a confidential informant." The district court's findings fully support the imposition of the enhancement and are not clearly erroneous.

3. Victor Alicea (00-3781)

Victor Alicea moved to suppress the evidence obtained in the search of his home on the grounds that he never gave consent to search. Victor submitted an affidavit in support of his motion stating that the officers never asked for consent to search and he never gave consent to search. In the alternative, Victor stated that if he gave consent, it was not voluntary. Special Agent Paul Byal testified to the contrary. In addition to the affidavit, Magistrate Judge Stephen Crocker heard testimony from Victor at the evidentiary hearing. The magistrate judge found that Victor did consent to the search and specifically that he did not believe Victor's assertion that he did not consent; however, he also concluded that the consent was not voluntary, based on the stressful circumstances, and recommended suppressing the evidence. The district court found the consent to search was voluntarily given and refused to suppress the evidence.

The enhancement may be imposed for: "providing materially false information to a judge or magistrate." U.S.S.G. sec. 3C1.1, Application Note 4(f). In the perjury context, which is akin to providing false information to a judge,

we have required the district court to find the three elements of: (1) falsity; (2) willfulness; and (3) materiality. E.g., United States v. Brimley, 148 F.3d 819, 823 (7th Cir. 1998); see also United States v. Dunnigan, 507 U.S. 87, 94 (1993). Whether the district court made the appropriate findings is reviewed de novo, and the district court's factual findings supporting the enhancement are reviewed for clear error. United States v. Gage, 183 F.3d 711, 715 (7th Cir. 1999).

The district court made the requisite findings, determining Victor Alicea "did provide his consent [to search], it was voluntary, and the Court believes that it was willfully false and certainly material to the issue at hand." Nevertheless, Victor argues that there was "no indication that Victor Alicea willfully sought to mislead the court," therefore the enhancement should not have been imposed. However, a district court's determination that a defendant's testimony was false is adequate to support the enhancement. United States v. Turner, 203 F.3d 1010, 1020 (7th Cir. 2000); Brimley, 148 F.3d at 822-24. The application of the sentencing enhancement based on Victor Alicea's false testimony was not clear error.

E. Violation of the Sixth Amendment Right to Confrontation

A district court's limitation of cross-examination is reviewed for an abuse of discretion, unless it directly implicates the core values of the Sixth Amendment right of confrontation which we review de novo. E.g., United States v. Neeley, 980 F.2d 1074, 1080 (7th Cir. 1992). Cross-examination in order to establish credibility, veracity, bias, or motivation is a core concern; at the same time, continuous, cumulative, or repeated exploration of such issues is a peripheral concern which the trial court may curb at its discretion. E.g., United States v. Nelson, 39 F.3d 705, 707-08 (7th Cir. 1994). "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised." United States v. Scott, 145 F.3d 878, 888 (7th Cir. 1998) (emphasis added); United States v. Saunders, 166 F.3d 907, 919

(7th Cir. 1999).

1.  Victor Alicea (00-3781)

At issue is the testimony of Justin Maldonado. Maldonado testified that between 1994 and 1999 he purchased cocaine from Melvin Alicea, Johnny Alicea, and Victor Matias, Jr. When Maldonado was asked by Victor Alicea's attorney about selling cocaine he invoked his Fifth Amendment right not to answer. However, on re-direct examination by the government Maldonado admitted he told the police about his cocaine sales to others.

Neither Melvin Alicea, Johnny Alicea, nor Victor Matias, Jr. asserts a Sixth Amendment violation based on Maldonado's invocation of his Fifth Amendment right. Instead, Victor Alicea, who Maldonado did not mention, asserts that he was denied his right to confront his accusers by the district court's ruling sustaining the government's objection to further questioning after the Fifth Amendment protection was invoked. Victor Alicea argues that by sustaining the government's objection, the district court prevented him from exposing Maldonado's criminal activity, which the jury could have used to weigh Maldonado's credibility.

Putting aside the fact that Maldonado never testified about Victor Alicea, Victor Alicea's Sixth Amendment right was not violated by the district court's limitation of Alicea's attorney's cumulative cross-examination into the specifics of Maldonado's drug sales. See United States v. Williamson, 202 F.3d 974, 977-79 (7th Cir. 2000). The trial transcript reveals that Victor's attorney throughly cross-examined Maldonado inquiring about his many purchases of cocaine, sale of cocaine and fake cocaine, the government's failure to prosecute him for those prior acts, and the government's current deal with him pertaining to this trial. (Tr., Aug. 1, 2000, a.m. session, at 101-106). Also, at closing arguments Victor's attorney stated: "He [Maldonado] was passing off just one more story, one more thing that would help him out in keeping his record of not being prosecuted for now seven counts he still has open or seven different people that he sold drugs to

that the government was aware of that he's not been prosecuted for." (Tr., Aug. 1, 2000, p.m. session, at 73-74). These are the same facts that Victor claims he was prevented from developing on cross-examination.

After all this testimony there is absolutely no doubt the jury was well aware of Maldonado's character and motivations for testifying. Williamson, 202 F.3d at 977 ("The right to cross-examination is not unlimited; the Confrontation Clause guarantees only effective cross-examination, not cross-examination of any type sought by the defendant."). The district court did not abuse its discretion by limiting further cross-examination on this peripheral matter.

F. U.S.S.G. sec. 6B1.2 Rejection of a Plea Agreement

A district court's decision to accept or reject a plea agreement is reviewed for an abuse of discretion. United States v. Sandles, 80 F.3d 1145, 1147 (7th Cir. 1996); United States v. Greener, 979 F.2d 517, 518 (7th Cir. 1992). The district court, exercising its discretion, may accept or reject a guilty plea since there is "no absolute right to have a guilty plea accepted." Santobello v. New York, 404 U.S. 257, 262 (1971); United States v. Denegal, 678 F.2d 47, 50 (7th Cir. 1982); Greener, 979 F.2d at 519-20. Plea agreements are contracts between the parties, and like stipulations, do not bind the court. See Sandles, 80 F.3d at 1147-48.

Under the rubric of the Sentencing Guidelines the court has the responsibility to use its sound discretion to examine plea agreements. As section 6B1.2(a) of the Sentencing Guidelines provides:

In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of

sentencing or the sentencing guidelines.

U.S.S.G. sec. 6B1.2(a) (Policy Statement) (emphasis added). Additionally, the official commentary to section 6B1.2 provides:

This requirement does not authorize judges to intrude upon the charging discretion of the prosecutor. If the government's motion to dismiss charges or statement that potential charges will not be pursued is not contingent on the disposition of the remaining charges, the judge should defer to the government's position except under extraordinary circumstances. Rule 48(a), Fed. R. Crim. P. However, when the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines.

U.S.S.G. sec. 6B1.2 (commentary) (emphasis added). "The sentencing judge must ensure that the main objectives of the sentencing guidelines, consistency and certainty in sentencing, are not undermined by plea bargaining between the parties." Greener, 979 F.2d at 520. It is with these principles in mind we turn to the challenge at hand.

1.  Victor Matias, Jr. (01-1929)

The plea agreement provided that Victor Matias, Jr. would plead guilty to conspiracy, and under oath he provided testimony regarding the activities of the conspiracy. In exchange, the government would dismiss the remaining two counts of the indictment for distribution. After the parties agreed to the plea, Matias, Jr. testified at the trial of Hector Carrasco, Johnny Alicea, and Victor Alicea. Matias, Jr.'s testimony at trial was directly contradictory to his prior sworn testimony. Matias, Jr. denied that he and the other three defendants on trial engaged in any drug deals, purchases, or conspiracy.

Based on the plea agreement the maximum sentence for the remaining conspiracy charge was 240 months (20 years) in prison. The PSR had previously calculated

his potential sentence (based on all three counts and applicable enhancements) at 360 months (30 years) to life in prison. At sentencing, the district court reviewed the plea agreement and rejected it, finding it did not adequately reflect the severity of the defendant's conduct and would "undermine the sentencing guidelines." Matias, Jr. subsequently withdrew his guilty plea. A superceding indictment alleging five counts was returned and the district court dismissed the prior indictment. A trial commenced and the jury found Matias, Jr. guilty on all five counts. The district court then sentenced Matias, Jr. to 360 months (30 years) and 5 years supervised release, and a concurrent term of 240 months (20 years) and 3 years supervised release.

Matias, Jr. does not argue that the district court abused its discretion in rejecting his plea agreement. Rather, Matias, Jr. asserts that the district court usurped the authority of the prosecutor in violation the principle of separation of powers. In the alternative, Matias, Jr. argues that U.S.S.G. sec. 6B1.2 is unconstitutional. These claims are, by far, the most imaginative arguments raised by any of the defendants in this appeal, albeit equally unsuccessful.

At the outset, Matias, Jr. seeks to treat the dismissal of the other counts as separate from the plea agreement. In the context of a plea agreement, the dismissal of specific charges is contingent on the defendant's guilty plea to other charges; in sum the dismissal and guilty plea are two parts of one agreement. Cf. United States v. Peterson, 268 F.3d 533, 534 (7th Cir. 2001). A plea agreement is a unified document, and even if the district court wanted to it could not accept part and reject part. See id. ("The whole plea agreement stands, or the whole thing falls.").

Matias, Jr. cites a number of cases in which a district court refused to grant a prosecutor's motion to dismiss the indictment under Fed. R. Crim. P. 48 and were reversed on appeal. The decision to indict, allege specific charges, or dismiss charges is inherently an exercise of executive power, and the prosecutor has broad discretion in these matters. See, e.g., Newman v. United States, 382

F.2d 479, 480-82 (D.C. Cir. 1967) (Burger, J.). The executive can choose not to prosecute one case, yet prosecute vigorously another involving the same issues. See id. (citing cases and stating that "[t]wo persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges."). The judiciary cannot compel prosecutions, nor can a judge refuse to grant the prosecution's voluntary motion to dismiss charges absent a specific finding of bad faith. See United States v. Palomares, 119 F.3d 556, 558 (7th Cir. 1997); United States v. Smith, 55 F.3d 157, 158-59 (4th Cir. 1995). Rule 48 of the Federal Rules of Criminal Procedure, requiring "leave of court" to dismiss an indictment, checks the discretionary power of the prosecutor to seek a nolle prosequi and later re-indict on the same charges. Rule 48 allows a court to ensure the fair administration of justice and prevent harassment of a defendant. Smith, 55 F.3d at 158-59. The leave of court requirement does not allow the judiciary to exercise executive powers; rather the condition protects the justice system judges oversee from misuse after proceedings have been initiated by the executive. See United States v. Goodson, 204 F.3d 508, 512-15 (4th Cir. 2000) (noting a court may dismiss charges under Rule 48(b) to "preserve the integrity of the judicial process.").

Since the judicial check on the prosecutorial power is a very limited one, a prosecutor's motion to dismiss must be granted unless "clearly contrary to manifest public interest." Smith, 55 F.3d at 158-59; United States v. Hamm, 659 F.2d 624, 628-30 (5th Cir., Unit A, Oct. 1981) (en banc); see also Rinaldi v. United States, 434 U.S. 22, 30 (1977). Judicial discretion becomes extremely limited in circumstances where the prosecutor seeks to dismiss the indictment with prejudice and the defendant joins the motion.

The facts of this case are in stark contrast to the Rule 48 cases cited above. The district court, exercising its authority under U.S.S.G. 6B1.2, rejected a plea agreement, not a motion to dismiss pursuant to Fed. R. Crim. P. 48. The United States Attorney for the Western District

of Wisconsin did not once object to the district court's rejection of the plea agreement, and does not assert that prosecutorial authority has been, in any way, usurped. As this panel suggested at oral argument, the Assistant U.S. Attorney, if he wanted to, could have effectuated the same result the plea agreement sought to by moving to dismiss the other counts with prejudice and having Matias, Jr. plead guilty to the remaining count. If Matias, Jr. joined a motion to dismiss with prejudice, the court would have been required to grant the motion, absent a specific finding that dismissal would be manifestly against the public interest. Cf. Hamm, 659 F.2d 629-30; Smith, 33 F.3d at 159. However, the U.S. Attorney was not upset by the rejection of the plea agreement because Matias, Jr., after accepting the benefits of the plea agreement, attempted to sabotage the U.S. Attorney's case by taking the witness stand and committing perjury in the trial of three other coconspirators.

As we noted at the outset of this analysis, the court has a role to play in plea bargains and need not accept a plea agreement because there is no absolute right to plead guilty. Greener, 979 F.2d at 519-20. The district court in Greener rejected two plea agreements before finally accepting a third, and we found the rejections to be well within the court's discretion. Id. The agreement here did not bind the court, and it was free to reject the agreement if it found the agreement would undermine the sentencing guidelines or did not adequately take into account the defendant's relevant conduct. See id.; Sandles, 80 F.3d at 1147-49. Taking into consideration Matias, Jr.'s role in the conspiracy and the sentence he would receive, the district court properly rejected the plea on the grounds it would undermine the sentencing guidelines. Greener, 979 F.2d at 519-20. The district court's role in reviewing plea agreements under U.S.S.G. 6B1.2 is neither improper, nor an exercise of executive authority in violation of the constitution. We conclude the district court did not abuse its discretion in rejecting the plea agreement in this case.

CONCLUSION

Because there are no errors in the district court's rulings at trial, and because the district court properly sentenced each defendant, we Affirm all the defendants' convictions and sentences.

FOOTNOTES

/* Case No. 3747, United States of America v. Hector Carrasco, was submitted on the briefs without oral argument. See Fed. R. App. P. 34; Cir. R. 34.

/1 In total, eight defendants were indicted and convicted, but only five have appealed aspects of their convictions or sentences. Johnny Alicea, Victor Matias, Sr., and Jefferson Selje did not appeal.

/2 An example of a better indictment is provided by another defendant in this appeal. Count one of the superceding indictment against Victor Matias, Jr. specifically charged Matias, Jr. with con-spiring to distribute in excess of 500 grams of cocaine. The jury found that Matias, Jr. did conspire to distribute more than 500 grams of cocaine. This more comprehensive indictment probably accounts for Matias, Jr. not appealing his sentence based on Apprendi.